

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00067-CV

PETER PAYNE, MARY BETH
PAYNE, DAVID HOWARD, AND
OKSANA HOWARD

APPELLANTS

V.

HIGHLAND HOMES, LTD.

APPELLEE

----------

FROM THE 431ST DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 2011-70650-431

----------

### MEMORANDUM OPINION[1]

----------

Appellants Peter Payne, Mary Beth Payne, David Howard, and Oksana

Howard (collectively Homeowners) appeal a summary judgment granted in favor

of appellee Highland Homes, Ltd. (Highland) on their claims of negligence/gross

negligence, breach of implied warranty of habitability, breach of implied warranty

---

[1]*See* Tex. R. App. P. 47.4.

of good and workmanlike construction, breach of contract, violations of the Deceptive Trade Practices Act (DTPA),[2] and fraud. We affirm the judgment of the trial court.

## I. Background

In 2005, Highland constructed and sold homes on Wildrose Drive, adjacent to Cottonwood Creek, to Homeowners. Cottonwood Creek is approximately thirty feet behind Homeowners' properties and is located on property belonging to The Trails of Frisco Golf Club.[3] Contemporaneous with their purchases, Homeowners entered into express limited warranties (the Limited Warranty) with Highland and a third-party warrantor, which set forth standards and tolerances permitted in the purchased homes. In 2007, Mr. Payne noticed erosion and in early 2010, he noticed cracks in his home. Mr. Howard noticed erosion and cracks in his home in late 2009. They attributed the cracks to the erosion caused by Cottonwood Creek. In 2011, Homeowners filed suit against Highland and others for damages to their homes caused by erosion and for damages due to residential construction defects.[4]

---

[2]See Tex. Bus. & Com. Code Ann. §§ 17.41–.63 (West 2011 & Supp. 2015).

[3]In 2002, Highland obtained these lots through a contract for the purchase of a series of lots from Little Elm/2000, Ltd. (the Lot Contract). Under the terms of the Lot Contract, Highland was "responsible for the reasonable costs of construction of retaining walls required for the development of the Lots." Little Elm was responsible for perimeter fencing.

[4]The other defendants were dismissed from this case.

In 2013, Highland filed a motion for summary judgment under both traditional and no-evidence summary judgment standards on all claims asserted in Homeowners' Fourth Amended Petition. Homeowners filed a response (Response), attaching affidavits and exhibits. The trial court granted summary judgment on each claim under both the traditional and no-evidence standards without explanation. However, the trial court stated in a footnote that

> [a] no-evidence motion for summary judgment shifts the burden of proof "to the nonmoving party to present evidence raising an issue of material fact **as to the elements specified in the motion**". *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006) (emphasis added). While the nonmoving Plaintiffs in this case attached a substantial volume of evidence to their response to Defendant's no-evidence motion, Plaintiffs failed to apply this evidence to **either** the specific causes of action **or** the specific elements challenged in the motion. Instead, Plaintiffs merely summarized their purported facts under the heading "Plaintiff's Evidence" without attempting to apply these facts in any manner responsive to Defendant's motion. *See Johnson v. Brewer & Pritchard P.C.*, 73 S.W.3d 193, 204 (Tex. 2002) (observing that if nonmovant generally discusses all the facts under a single heading, they may forget to address the challenged elements).

## II. Analysis

In three issues, Homeowners contend that the trial court erred by (1) refusing to treat Highland's motion for summary judgment as a special exception, (2) granting Highland's traditional summary judgment as to all of the Homeowners' claims, and (3) granting Highland's no-evidence motion for summary judgment.

## A. Special Exception

In their first issue, Homeowners complain that the trial court erred by refusing to treat Highland's motion for summary judgment as a special exception. Although this issue is listed in their "Issues Presented," Homeowners failed to mention the argument in the body of their brief and failed to provide any argument or citation to support this issue. To present an issue to this court, a clear and concise argument for the contention made with appropriate citations to the authorities and record is necessary. Tex. R. App. P. 38.1(i). Bare assertions of error, without argument or authority, waive error. *See Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 486 (Tex. App.—Dallas 1995, writ denied); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (holding appellate court has discretion to waive point due to inadequate briefing). When a party fails to adequately brief a complaint, she waives the issue on appeal. *Howell v. T S Commc'ns, Inc.*, 130 S.W.3d 515, 518 (Tex. App.—Dallas 2004, no pet); *Devine v. Dallas Cty.*, 130 S.W.3d 512, 514 (Tex. App.—Dallas 2004, no pet.). We hold that by failing to adequately brief their complaint, Homeowners have waived review of this issue. *See Sullivan*, 943 S.W.2d at 486. We therefore overrule it.

## B. Summary Judgment Issues

In their second issue, Homeowners challenge the traditional summary judgment, and in their third issue, they challenge the no-evidence summary judgment.

4

## 1. Standard of Review

When, as here, a party moves for summary judgment under both rules 166a(c), governing traditional summary judgments, and 166a(i), governing no-evidence summary judgments, we will first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the appellant failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the appellee's summary judgment proof satisfied the less stringent rule 166a(c) burden. *Id.*

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary-judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt. (1997); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

We review the grant of summary judgment de novo. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013). When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the non-movant, indulging every reasonable inference and resolving any doubts against the motion. *Id.* at 59–60; *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We

review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton,* 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc.*, 206 S.W.3d at 582). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied,* 541 U.S. 1030 (2004).

The standard of review for a traditional summary judgment is well established. The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

6

## 2. No-Evidence Summary Judgment

In their third issue, Homeowners complain that the trial court erred in granting a no-evidence summary judgment on each of their claims because they raised more than a scintilla of evidence in their Response. Highland first responds that Homeowners have waived error by failing to identify or barely mention several of their claims in their briefing before this court. *See* Tex. R. App. P. 38.1. Second, Highland argues that Homeowners failed to carry their summary judgment burden by failing to specifically present their arguments to the trial court; instead they attached voluminous evidence to their Response without discussing how the evidence supported the legal arguments. Third, Highland argues that Homeowners failed to raise more than a scintilla of evidence in response to its no-evidence motion for summary judgment.

### a. Failure to Adequately Brief the Issues on Appeal

Highland complains that Homeowners' appellate briefing fails to adequately address their arguments on appeal; therefore, they are waived. Homeowners' Fourth Amended Petition alleged multiple causes of action against Highland including negligence, gross negligence, breach of implied warranty of habitability, breach of implied warranty of good and workmanlike construction, breach of contract, DTPA violations, fraud, fraud in the inducement, fraud by nondisclosure, and statutory fraud. The judge granted Highland's traditional and no-evidence summary judgment motion as to each claim.

7

Specifically, Highland complains that Homeowners' briefing fails to address the summary judgment granted on the claims of gross negligence, breach of warranty, breach of an implied warranty of habitability, and common law fraud because those grounds are never mentioned in Homeowners' appellate brief. Furthermore, Highland argues, even those claims mentioned in the brief, however cursory, including negligence, breach of contract, DTPA violations, fraud in the inducement, fraud by nondisclosure, and statutory fraud are inadequately briefed because the brief contains no argument explaining how the evidence applies to those claims. Homeowners respond that because the standard of review on appeal is *de novo* review, their briefing is adequate.

Rule 38.1 of the rules of appellate procedure provides that the appellate brief must state all issues or points presented for review and a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. Tex. R. App. P. 38.1(f), (i). "Bare assertions of error, without argument or authority, waive error. When a party fails to adequately brief a complaint, he waives the issue on appeal." *Newby v. UHL*, No. 02-10-00466-CV, 2012 WL 3115628, at *5 (Tex. App.—Fort Worth Aug. 2, 2012, no pet.) (mem. op.) (quoting *Washington v. Bank of New York*, 362 S.W.3d 853, 854–55 (Tex. App.—Dallas 2012, no pet.) (citations omitted)); *see Sullivan*, 943 S.W.2d at 486; *see also Fredonia State Bank*, 881 S.W.2d at 284.

Homeowners do not even mention the trial court's ruling on their claims of gross negligence, breach of warranty of good and workmanlike construction, or

8

breach of the implied warranty of habitability in their briefing. The brief contains no argument, authority, or record citation relating to these claims. Therefore, we hold that Homeowners waived error as to their claims of gross negligence, breach of warranty of good and workmanlike construction, and breach of the implied warranty of habitability, and we affirm the trial court's summary judgment as to those claims.

We will address Homeowners' remaining issues as to their remaining claims of negligence, breach of contract, DTPA, and fraud below.

### b. Failure to Point out Evidence to the Trial Court

Before reviewing the evidence substantively, we must address Highland's argument that Homeowners failed to carry their summary-judgment burden demonstrating a genuine issue of material fact by including voluminous summary judgment evidence in their Response without explaining the claims or points to which it related. The trial court referred to the inadequacy of the Response in a footnote in the order granting the no-evidence summary judgment. The trial court noted that while Homeowners attached a substantial volume of evidence to their Response, Homeowners failed to apply the evidence to the specific causes of action or elements of the claims that were challenged in the motion. "Instead, Plaintiffs merely summarized their purported facts under the heading 'Plaintiff's Evidence' without attempting to apply these facts in any manner responsive to

9

Defendant's motion." This appears to be an independent ground supporting the trial court's granting of the no-evidence summary judgment.[5]

When a no-evidence-summary-judgment movant asserts that there is no evidence of one or more essential elements of claims on which the respondent would have the burden of proof at trial, the respondent is not required to marshal its proof. *Brewer & Pritchard P.C.*, 73 S.W.3d at 207. The respondent need only point out evidence that raises a genuine issue of material fact on the challenged elements. Tex. R. Civ. P. 166a(i) cmt. (1997). However, a nonmovant cannot avoid summary judgment by filing voluminous summary judgment evidence with a response that states generally that a genuine fact issue has been raised as to each element. "[T]he response must point out evidence that raises a genuine issue of fact *as to each challenged element.*" *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 331 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (emphasis added) (citing *Hintz v. Lowe*, Nos. 14-03-00979-CV, 14-03-00983-CV, 2004 WL 2359260, at *2–3 (Tex. App.—Houston [14th Dist.] Oct. 21, 2004, no pet.) (mem. op.)). For a response to be adequate, the nonmovant must provide some form of discussion in its response that raises issues of material fact on the

---

[5]Homeowners argue that this was the sole ground upon which the trial court granted Highland's motion for summary judgment on all of plaintiffs' claims. However, the trial court's summary judgment order specifically grants both the no-evidence and traditional motion for summary judgment on each claim without explanation.

challenged elements. *Holloway v. Tex. Elec. Util. Constr., Ltd.*, 282 S.W.3d 207, 212 (Tex. App.—Tyler 2009, no pet.).

The Supreme Court of Texas addressed the burden of the responding party to "point out" evidence in *Brewer & Pritchard, P.C.*, 73 S.W.3d at 206–08. In *Brewer & Pritchard, P.C.*, the supreme court focused on the adequacy of the response to a no-evidence point on a conspiracy claim. *Id.* at 207–08. The response detailed evidence indicating that Chang, one of the alleged co-conspirators, benefitted from Johnson's, the other alleged co-conspirator's, fee agreement and stated, "These facts clearly evidence a sloppy but, thus far effective scheme to funnel half of the referral funds through Johnson . . . and then, back to Chang." *Id.* at 207. The response also stated that the conspiracy claims were based on Chang's breach of fiduciary duty and then set forth argument and authorities to support its position that Chang owed a fiduciary duty and that other defendants had aided and assisted the breach of fiduciary duty. *Id.* at 207. Although the supreme court noted that it was a close question, the court held that the response met the minimum requirements of Rule 166a(i). *Id.* at 208.

In *San Saba Energy*, the court of appeals looked to *Brewer & Pritchard* in analyzing the adequacy of the response to a no-evidence summary judgment motion. 171 S.W.3d at 330–32. In *San Saba Energy*, the defendant sought a no-evidence summary judgment on the plaintiffs' breach of contract claim based on his alleged failure to give timely notice. *Id.* at 330. In reviewing the response,

11

the court noted that the plaintiffs "state[d] generally that the summary-judgment evidence raise[d] fact issues as to all of the elements of all of their claims, and they incorporate[d] by reference more than six hundred fifty pages of evidence." *Id.* at 331. "Although the response describe[d] much of the evidence filed in response to Crawford's motion, it d[id] not state that any of this evidence raise[d] a fact issue . . . ." *Id.* at 330. The court of appeals held that the response was inadequate and stated that to hold otherwise

> would be holding that a nonmovant can avoid summary-judgment by filing voluminous and complicated summary-judgment evidence along with a response that states generally that a genuine fact issue has been raised as to each element. In that event, the trial court would have the onerous task of searching the summary-judgment evidence to see if a genuine issue of fact had been raised as to each challenged element. Such a holding would place an unreasonable burden on the trial court and would violate the requirement of Rule 166a(i) . . . .

*Id.* at 331.

Likewise in *MaximusAlliance Partners, LLC v. Faber*, No. 05-13-01688-CV, 2015 WL 707033 (Tex. App.—Dallas Feb. 17, 2015, no pet.) (mem. op.), the Dallas court of appeals reviewed the adequacy of a response to a no-evidence motion for summary judgment and determined that the response was inadequate because the respondent provided a large amount of evidence but gave no direction as to what evidence supported which of six claims it addressed. *Id.* at *8–9. The court noted that it is not necessary for the response to lay out each element of each claim and match up the evidence to each element. *Id.* at *9. "However, one must do more than itemize the evidence and then, in a section

12

totally separate from the recitation of the evidence, offer general conclusions that '(t)he above evidence conclusively establishes each element of the Plaintiff's claims for aiding and abetting by the (appellees).'" *Id.*

This case involved ten causes of action and 485 pages of evidence produced by Appellants alone. The Response does not address all the causes of action or the evidence associated with each cause of action. It never references Homeowners' breach of contract claim, and it is unclear which contract they claim is breached. The Response contains no argument and references no evidence to support Homeowners' breach of contract claim. We therefore hold that the trial court did not err in granting summary judgment on Homeowners' contract claim because the Response failed to point out evidence that raises a genuine issue of material fact on the challenged elements. *See* Tex. R. Civ. P. 166a(i) cmt. (1997). We affirm the judgment of the trial court as to Homeowners' breach of contract claim.

Although the Response fails to clearly set forth argument and evidence supporting the claims, the Response does reference, however confusingly, Homeowners' negligence, DTPA, and fraud claims and references and incorporates the affidavits of experts Pete Lee, Ralph Mansour, and Mark Johns as well as Homeowners' affidavits. Further, despite the confusing nature of the Response, Homeowners have pointed to evidence that allegedly raises a fact issue as to their negligence, fraud and DTPA claims. We will therefore review whether the referenced evidence raises a fact issue below.

13

### c. Negligence Claims

In their Fourth Amended Petition, Homeowners alleged broadly that Highland was negligent in failing to provide a retaining wall to avoid erosion and that Highland negligently constructed or designed Homeowners' homes. In its no-evidence motion for summary judgment, Highland claimed Homeowners could not produce a scintilla of evidence to raise a fact issue on each element of their negligence claims. Homeowners responded by referring to the expert affidavits of Pete Lee, Ralph Mansour, and Mark Johns attached to the Response and argued that these affidavits raised a fact issue as to their claims of Highland's negligent failure to erect retaining walls and negligent design and construction of their homes.

The elements of negligence include: (1) duty, (2) breach, and (3) proximate cause. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). Proximate cause has two components: (1) cause-in-fact, and (2) foreseeability. *Id.* The test for cause-in-fact is whether the negligent conduct was a substantial factor in bringing about the injury and whether the injury would have occurred without such conduct. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010). To prove foreseeability, the plaintiff must establish that a person of ordinary intelligence should have anticipated the danger created by the negligent act or omission. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). Highland challenged all of these elements. Specifically, Highland pointed out that there was no evidence that it could foresee the erosion

14

complained of or the need for retaining walls when the lots were sold to Homeowners.

### i. Homeowners' Evidence of Negligence—the Experts

Homeowners relied extensively on the affidavits of Pete Lee, Ralph Mansour, and Mark Johns (reciting parts of them verbatim in their Response) as support that Highlands was negligent in not providing retaining walls and negligent in the design and construction of the homes. Pete Lee, a registered professional geologist and certified professional hydrologist, opined that severe erosion had historically occurred and was presently occurring due to natural processes and acceleration from a concrete drainage channel. He concluded that Homeowners' properties should have been evaluated in regards to bank erosion and foundation stability "because of the shallow soil properties and Eagle Ford formation properties, which were publicly available for consideration." He further concluded: "Without a proper retaining wall, the soils upon which Plaintiffs' homes are built will continue to erode, resulting in continued subsidence of soils evident in the movement of fences and concrete slabs that Plaintiffs have testified has occurred on their property."

Ralph Mansour, a licensed professional engineer specializing in geotechnical engineering and structural engineering, opined that there are several factors that affect the slope failure of Homeowners' properties. Specifically, he stated that surface water was diverted by the developers and builders of the subdivision and surrounding subdivisions and that it was eroding

15

Homeowners' properties. He further stated that the surface water diversion was also causing increased flooding that was further destabilizing the soils beneath Homeowners' properties. Mansour concluded that the soil erosion of the creek bank and lack of any soil retention system had caused Homeowners' damages.

In addition to his opinions on the cause of the soil erosion, he also reviewed the Lot Contract with Little Elm and concluded that Highland should have constructed a soil retention system on Homeowners' properties. Finally, having viewed Homeowners' properties, Mansour opined that the damage he reviewed was caused by either the lack of a soil retention system or poor construction of the homes' foundations or both.

Mark Johns, a homebuilder with experience developing residential lots, reviewed the Lot Contract between Highland and Little Elm and declared that Highland was required to build retaining walls. His opinion was that Highland failed to protect Homeowners' properties and prevent soil movement by failing to install retaining walls on Homeowners' properties and that the failure to take these actions caused damage to Homeowners' properties.

### ii. Discussion

Homeowners contend Highland was negligent for failing to construct a retaining wall and for improperly constructing the homes. We examine whether Homeowners produced a scintilla of evidence to support the elements of negligence: (1) duty, (2) breach, and (3) proximate cause. *See W. Invs., Inc.*, 162 S.W.3d at 551. In his affidavit Lee describes the current state of

16

Homeowners' properties and how further erosion will occur without a retaining wall on each property, but there is no discussion of any duty owed by Highland to provide retaining walls to Homeowners. Lee attributes the property erosion to natural causes and a concrete drainage channel rather than to any particular activity of Highland. Lee does not discuss any issues concerning the construction of the homes in his affidavit.

The Mansour and Johns affidavits appear to rely on the Lot Contract between Highland and Little Elm to impose the duty on Highland to provide retaining walls for Homeowners' properties. Specifically, the Lot Contract provides that Highland "shall be responsible for the reasonable costs of construction of retaining walls required for the development of the Lots. Seller [Little Elm] shall be responsible for the costs of construction and maintenance of any and all perimeter or screening walls required for the development of the Lots . . . ." The interpretation of an unambiguous contract is a question of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Based on a plain reading of the entire contract, the foregoing provision pertains to the cost-sharing between the parties to the Lot Contract rather than creating an obligation to future purchasers of the lots. *See Frost Nat. Bank v. L& F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (providing that courts consider the entire writing and attempt to give effect to all its provisions by analyzing the provisions with reference to the entire agreement). None of the Homeowners were parties to the Lot Contract, nor did any Homeowners purchase their lots from Highland until

17

2005 under separate contracts of sale. Thus, the Lot Contract did not impose a duty on Highland towards Homeowners. Moreover, neither Mansour's nor Johns's opinions regarding the meaning of the Lot Contract and the alleged duty imposed on Highland are probative because contract interpretation is a question of law. *See Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 94–95 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding an expert may not testify on pure questions of law).

Finally, even if the Lot Contract imposed a duty on Highland to build a retaining wall when required, Highland argues that Homeowners pointed to no evidence that such a duty arose prior to the sale of the lots or construction of their homes or that Highland could foresee the erosion damage at the time of the sales. Neither Mansour nor Johns included any declarations in their affidavits as to the state of the lots or Highland's knowledge of the erosion issues at the time of the sales. Lee noted that erosion had historically occurred and was continuing to occur, but there is no reference to the state of Homeowners' properties at the time of their purchase or construction of the homes. Although Lee states that the "properties should have been evaluated in regards to bank erosion and foundation stability because of the shallow soil properties and Eagle Ford formation properties, which were publicly available for consideration," that declaration is not evidence of the state of the lots at the time of the sale to Homeowners or of what such an evaluation would show.

18

### iii. Negligent Construction or Design

The only expert evidence relating to the negligent construction or design of Homeowners' homes referenced in the Response is the statement by Mansour that the damage to Homeowners' homes was "caused by either: (1) Highland Homes should have [sic] constructed a soil retention system on each of the plaintiff's lots to prevent future soil movement . . . or (2) . . . poor construction of the home's foundation; or both." The Response presents no further explanation or discussion regarding the particular defect relating to the foundation or Highland's connection to the alleged foundation defect. Mansour's statement about the foundation, without any apparent basis, is conclusory and cannot be considered probative. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009) (holding opinion testimony that is conclusory is not probative and cannot support a judgment).

In their Response, Homeowners pointed to their affidavits as evidence that the construction of their homes was not in a workmanlike manner.[6] However, the affidavits provide no support that any construction or design was negligent. Because Homeowners did not provide any evidence to raise a fact issue as to the elements of duty, breach, or causation, we affirm the trial court's summary judgment on their negligence claims.

---

[6]We do not address whether expert testimony would be required in this case to support the negligent construction claims. *See Mack Trucks, Inc.*, 206 S.W.3d at 583.

19

### d. DTPA and Fraud Claims

Homeowners claimed that Highland failed to disclose information to them about the erosion issue and a need for a retaining wall prior to selling Homeowners their homes. These misrepresentations and omissions form the basis for Homeowners' DTPA and fraud claims. In their Response, Homeowners relied on the Randle and Lee affidavits. Specifically, Homeowners relied on the Lot Contract as demonstrating Highland's knowledge of a need for a retaining wall and Lee's declaration that the shallow soil properties and Eagle Ford formation properties were publicly available for consideration as evidence that should have prompted Highland to disclose the erosion and the need for a retaining wall.

### i. DTPA Claim

"The DTPA grants consumers a cause of action for false, misleading, or deceptive acts or practices." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); *see* Tex. Bus. & Com. Code Ann. § 17.50(a); *see also id.* §§ 17.45(5), 17.46(b). To recover under the DTPA, Homeowners were required to prove (1) they are consumers; (2) Highland committed one or more of the following wrongful acts: (a) false, misleading, or deceptive acts or practices specifically enumerated in Section 17.46(b) of the Texas Business and Commerce Code; (b) a breach of an express or implied warranty; or (c) an unconscionable action or course of action; and (3) such actions were a producing cause of Homeowners' injuries. *See Amstadt*, 919 S.W.2d at 649; *Doe*, 907

20

S.W.2d at 478. To prevail on a claim for failure to disclose, Homeowners must prove four elements: (1) a failure to disclose information concerning goods or services, (2) which was known at the time of the transaction, (3) if such failure was intended to induce the consumer into a transaction, (4) which the consumer would not have entered had the information been disclosed. *See* Tex. Bus. & Com. Code Ann. § 17.46(b)(24); *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 744 (Tex. App.—Fort Worth 2005, no pet.).

Highland argues that Homeowners have failed to point to any evidence of nondisclosure of a material fact because there is no evidence that the condition of the soil at the time Homeowners purchased their lots required a warning about erosion or a retaining wall. Although Lee included in his affidavit declarations about the ongoing erosion in the area, there is no evidence that Highland knew or should have known of soil erosion or potential erosion on the lots in question such that Highland had a duty to disclose the erosion to Homeowners prior to the sale of their homes in 2005. Further, although Lee concluded that the Cottonwood Branch bank adjacent to Homeowners' lots was severely eroding, he did not provide any timeframe about the state of their lots in 2005 prior to their purchase by Homeowners.[7] Lee also opined that the properties should have been evaluated in regard to the bank erosion prior to constructing the homes, but

---

[7]According to Lee, one of the contributing factors to the erosion was not constructed until 2005: "[t]he concrete drainage channel upstream appears to have been constructed in 2005 . . . and is likely contributing to the increased surface water flow and subsequent downstream bank erosion."

21

that is no evidence that Highland knew or should have known about the erosion and failed to disclose it with the intent to induce Homeowners to purchase their property. *See Head*, 159 S.W.3d at 744 (citing *Rayford v. State*, 16 S.W.3d 203, 211 (Tex. App.—Dallas 2000, pet. denied) (op. on reh'g) (holding State failed to meet its burden as a matter of law when it presented no evidence that failure to disclose information induced any consumer into a transaction she would not have entered had she known this information)). We therefore hold that Homeowners have not met their burden to produce evidence raising a genuine issue of material fact as to their DTPA claim. We affirm the judgment of the trial court on the DTPA claim.

### ii. Statutory and Common Law Fraud

Highland moved for summary judgment on all of Homeowners' fraud-based claims, based on the lack of any evidence of a misrepresentation or omission. For a common-law fraud claim, a party must prove the following:

(1) that a material representation or omission occurred;

(2) that the speaker knew it was false when made or that the speaker made it recklessly without any knowledge of the truth and as a positive assertion;

(3) that he made it with the intention that it be acted upon by the other party; and

(4) that the party relied upon it to his detriment.

*T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992); *accord Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). Section 27.01(a) of the business and commerce code creates a

22

statutory cause of action for fraud in a real estate transaction. *See* Tex. Bus. & Com. Code Ann. § 27.01(a) (West 2015). Fraud in a real estate transaction occurs if (1) a person makes a false representation of a past or existing material fact in a real estate transaction to another person for the purpose of inducing the making of a contract, and (2) the false representation is relied on by the person entering into the contract. *Id.* § 27.01(a)(1).

To the extent Homeowners' fraud claims are based on the nondisclosure of the erosion issue, there is no evidence of fraud for the reasons set forth above in our discussion upholding summary judgment on their DTPA claim. Homeowners failed to point to evidence that raised a fact issue that Highland knew or should have known, at the time of the sale to Homeowners, that erosion would damage their property or that a retaining wall was required. In addition to the alleged omission related to the erosion, there is a reference in Homeowners' Response that "[i]t may reasonably be inferred from the circumstantial evidence in this record that HIGHLAND HOMES knowingly made misstatements regarding the quality of the work given the incompetence identified by Plaintiff's experts." However, there is no reference to any evidence to support this inference in the Response and no identification of the specific misstatements or the work to which they apply. Because Homeowners failed to point to any evidence that fraud occurred, we affirm the trial court's judgment on the common law fraud and statutory fraud claims.

### e. Proper No-Evidence Summary Judgment

Having upheld the trial court's no-evidence summary judgment on all Homeowners' claims, we overrule their third issue, and we do not reach their second issue challenging the traditional summary judgment. *See* Tex. R. App. P. 47.1; *Ford Motor Co.*, 135 S.W.3d at 600.

### III. Conclusion

Because we have overruled Homeowners' first and third issues, which are dispositive, we affirm the trial court's judgment.

/s/ Rebecca Simmons
REBECCA SIMMONS
JUSTICE

PANEL: GABRIEL and SUDDERTH, JJ.; and REBECCA SIMMONS (Former Justice, Sitting by Assignment).

DELIVERED: June 30, 2016

24